FILED

2019 SEP 10 AM II: 32

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ orew _____
DEPUTY

| | | |
|---|---|---|
| QUINN PALACIOS CRUZ JR., | § | |
| TDCJ No. 1476178, | § | |
| **Petitioner,** | § | |
| | § | |
| v. | § | **EP-18-CV-243-DCG** |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Quinn Palacios Cruz Jr., a state prisoner confined at the Telford Unit in New Boston,

Texas, challenges Respondent Lorie Davis's custody of him through a pro se petition for a writ of

habeas corpus under 28 U.S.C. § 2254.   After reviewing the record and for the reasons discussed below,

the Court concludes that Cruz is not entitled to federal habeas relief.   Accordingly, the Court will deny

his petition and deny him a certificate of appealability.

### BACKGROUND AND PROCEDURAL HISTORY

Cruz was indicted for the capital murder of his girlfriend, Tonya West, and her unborn fetus, in

Cause Number 20060D581 in the 205th Judicial District Court in El Paso County, Texas.   *Cruz v. State*,

No. 08-08-00213-CR, 2010 WL 2949292, at *1 (Tex. App.—El Paso, July 28, 2010).   The State gave

notice it would not seek the death penalty.

Evidence at trial established Cruz and West moved into an apartment in El Paso, Texas, on

October 18, 2005.   Approximately one week later, they broke up and West moved into another

apartment—Apartment 809—in the same complex.

On the morning of November 18, 2005, residents of the apartment complex observed Cruz,

West, and West's two-year old daughter in the apartment parking lot.   They heard a gunshot and a

woman scream. They saw West try to get away as Cruz followed her through the parking lot while firing a weapon at her. A resident who rushed to West's side asked if she knew who shot her. West replied, "Quinn Cru-." *Id.* Another resident testified Cruz calmly walked away. West died later at the hospital.

The medical examiner, Dr. Juan Contin, performed the autopsy on West. He determined four bullets had entered West's body, including one fired at close range, approximately twelve to fifteen inches from her body. He concluded West died from internal bleeding caused by multiple gunshot wounds. He also discovered West was about two-to-three weeks pregnant at the time of her death.

Cruz's medical expert, Dr. Harry Wilson, agreed with Dr. Contin's estimate of the embryo's stage of development. According to Dr. Wilson, there were no visible signs of pregnancy.

The trial court submitted the charged offense of capital murder—for both West and the unborn child—and the lesser-included offense of murder—West only—to the jury. The jury found Cruz guilty of capital murder as charged in the indictment. By statute, his punishment was automatically set at life in prison without parole. *See* Tex. Penal Code Ann. § 12.31 (Vernon Supp. 2009) ("An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for . . . life without parole . . .").

On appeal, the State conceded the evidence was legally insufficient to prove Cruz intended to kill the unborn child, as there was no evidence that Cruz knew West was pregnant. *Id.*, at *3. But it argued the appellate court should reform the judgment to reflect a conviction for the murder of West and remand the cause to the trial court for a new punishment hearing. The Eighth Court of Appeals agreed. *Id.* It found error, reformed the judgment to reflect the lesser-included offense of murder, and ordered a new punishment hearing. *Id.*, at *2–3. After the new punishment hearing, Cruz was sentenced to life in prison.

Cruz appealed again, but this time the appellate court affirmed the judgment. *Cruz v. State*, No. 08–14–00058–CR, 2016 WL 3194924 (Tex. App.—El Paso, 2016, pet. ref'd). He filed a petition for discretionary review, but it was refused. *Cruz v. State*, No. PD-1098-16 (Tex. Crim. App. 2017).

Cruz next filed a state application for writ of habeas corpus. State Writ Application 79–96, ECF 21-45. He raised five grounds for relief:

(1) His trial counsel provided constitutionally ineffective assistance during the guilt/innocence phase of the trial. Specifically, his trial counsel failed to present evidence that the victim had pulled a gun on him and threatened to shoot him on a prior occasion, had started several verbal arguments with him while they lived in Denver, Colorado, and had filed harassment and terroristic threat charges against him. *Id.*, at 84.

(2) His trial counsel provided constitutionally ineffective assistance during his second punishment trial. Specifically, all of his counsel were employed by the El Paso County Public Defender's Office, and, as a consequence, he believed his trial counsel at his second punishment hearing did not raise errors made by his counsel at the guilt/innocence phase of his trial. *Id.*, at 88.

(3) The State engaged in pervasive misconduct during trial. Specifically, the State made improper sidebar comments during the cross-examination of Cruz. The State also made improper arguments regarding probation, facts not in evidence, and community expectations. *Id.*, at 86.

(4) The State engaged in misconduct during closing argument. Specifically, the State discussed facts outside the record and misstated facts and the law. For example, the State asked the jury to impose the maximum fine of $10,000 because Cruz could work while he was in prison and earn money to pay off the fine. This statement was incorrect, but, as a result, he was fined $10,000. *Id.*, at 90.

(5) The trial court erred when it ruled on various motions. Specifically, it erred when it denied his trial counsel's motion to withdraw due to a conflict of interest, denied his motion for a new trial, and then granted his trial counsel's motion to withdraw and substitute counsel. *Id.*, at 92.

Cruz's application was denied without written order by the Texas Court of Criminal Appeals. *Ex parte Cruz*, WR-69,786-02 (Action Taken), ECF No. 21-41. Cruz's federal petition followed on August 13, 2018.

Cruz again raised five grounds for relief:

(1) His trial counsel provided constitutionally ineffective assistance during the guilt/innocence phase of the trial. Specifically, his trial attorneys refused to submit the guns found in West's apartment as mitigating evidence in his defense. He claimed West threatened to shoot him on a previous occasion and she filed numerous false accusations against him to get him in trouble. He conceded the guns and rebuttal evidence were later offered as defense evidence at his second punishment hearing, which occurred several years later. Pet'r's Pet. 6, ECF No. 1.

(2) His trial counsel provided constitutionally ineffective assistance during his second punishment trial. Specifically, his lead attorney, Felix Castanon, filed a pre-trial "Motion to Withdraw" citing a "conflict of interest." The trial court denied the motion, forcing Castanon to represent Cruz at the punishment phase of his trial. Consequently, Castanon did not raise the trial errors committed by his co-workers, who had represented Cruz at guilt/innocence phase of his trial several years before, and his client, Cruz, was sentenced to life and fined the maximum amount of $10,000. *Id.*, at 7.

(3) The State engaged in pervasive misconduct during trial. Specifically, the State made several improper sidebar comments during Cruz's cross-examination. Additionally, the State continued its improper misconduct by eliciting testimony that did not exist in the record from three witnesses. Also, the State forced Cruz to object another five times for improper arguments regarding probation, facts not in evidence, and community expectations. *Id.*, at 6.

(4) The State engaged in misconduct during closing argument. Specifically, Cruz was fined the maximum amount of $10,000 because the State incorrectly told the jury that he could work while he is in prison and earn money to pay off the fine. *Id.*, at 7.

(5) The trial court erred when it ruled on various motions. Specifically, the trial court denied Cruz's pre-trial "Motion to Withdraw," which cited existing conflict of interest; denied his "Motion for New Trial"; and granted his counsel's "Motion to Withdraw and Substitute Counsel" after he was sentenced to life in prison and fined $10,000. *Id.*, at 8.

Cruz asks the Court to order his immediate release from State custody. *Id.*, at 7. In the alternative, he asks the Court to order a new trial on both the guilt/innocence and punishment phases. *Id.* He also asks for an evidentiary hearing. *Id.*

Cruz's claims are the same or similar in his state application and federal petition. As a result, Davis "believes Cruz exhausted his state court remedies for the above claims and filed his petition in a

timely manner." Resp't's Answer 5, ECF 18.

## APPLICABLE LAW

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

As a result, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They must generally defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). And they must defer to state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998). They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332, n.5). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## A. Adjudicated Claims

For claims previously adjudicated in state court, 28 U.S.C. § 2254(d) imposes a highly deferential standard which demands a federal habeas court grant relief only where the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Moreover, the federal habeas court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion"). And state courts are presumed to "know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact). The presumption of correctness applies not only to express findings of fact, but also to "unarticulated

findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

## B. Unadjudicated Claims

A state prisoner must exhaust available state remedies before seeking federal habeas corpus relief, thereby giving the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See* 28 U.S.C. § 2254(b)(1) (explaining that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

When a state prisoner presents unexhausted claims, the federal habeas court may dismiss the petition. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 519–20 (1982)). If a state prisoner presents a "mixed petition" containing both exhausted and unexhausted claims, the federal habeas court may *stay* the proceedings or *dismiss* the petition without prejudice to allow the petitioner to return to state court and exhaust his claims. *Rhines v. Weber*, 544 U.S. 269, 278 (2005); *Pliler v. Ford*, 542 U.S. 225, 227 (2004). Alternatively, the federal habeas court may *deny* relief on an unexhausted or mixed claim on the merits, notwithstanding the petitioner's failure to exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(2). A federal habeas court may *grant* relief on an unexhausted or procedurally defaulted claim *only* if the petitioner demonstrates cause for the default and actual prejudice arising from the default—or shows the failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749–50; *Barrientes v. Johnson*, 221 F.3d 741, 758 (5th Cir. 2000). This means that before a federal habeas court may grant relief on an unexhausted claim, the petitioner must show that some objective, external factor prevented him from complying with the state procedural rule. *Martinez v. Ryan*, 566

U.S. 1, 13–14 (2012).   When reviewing an unexhausted claim on the merits, the deferential standard of

review does not apply.   Instead, the federal habeas court examines unexhausted claims under a de novo

standard of review.   *Cullen v. Pinholster*, 563 U.S. 170, 185–86 (2011); *Carty v. Thaler*, 583 F.3d 244,

253 (5th Cir. 2009).

## ANALYSIS

(1) **Cruz asserts his counsel provided ineffective assistance when they failed to
introduce evidence of West's threats against him during the guilt/innocence phase
of his trial.**

(2) **Cruz contends his counsel provided ineffective assistance when they failed to raise
errors in the guilt/innocence phase of his trial and during the second punishment
phase of his trial.**

Cruz argues his counsel provided ineffective assistance during the guilt/innocence phase of his

trial when they failed to introduce mitigating evidence in the form of the victim's gun ownership and the

victim's instigation of his threatening and violent behavior.

> Petitioner's trial attorneys refused to submit the guns that were found in Tonya West's
> apartment as mitigating evidence in his defense.   West had threatened to shoot Petitioner
> on a previous occasion, and she had filed numerous false accusations against Petitioner to
> get him in trouble.   The guns and rebuttal evidence were later offered as defense evidence
> at Petitioner's Punishment trial that occurred several years later.

Pet'r's Pet. 6, ECF No. 1.   Cruz maintains—although he gunned down an unarmed West outside her

apartment—his attorneys should have produced evidence that West had two guns in her home at the

time of the shooting to support his claim that she had previously threatened him with a gun.   *Id.* at 14.

He also contends his attorneys should have presented evidence that West induced him to threaten to kill

her and otherwise harass her.   *Id.*   In short, Cruz suggests the jury would have looked favorably on

evidence that West caused him to fly from Colorado to Texas and fatally shoot her in a busy apartment

complex in front of her two-year old daughter.   *See* Reporter's R., vol. 4, pp. 182–83, ECF No. 20-26;

*id.*, vol 5, pp. 24–25, 30–31.

He further argues his counsel provided ineffective assistance during the second punishment phase of his trial by failing to raise trial errors committed during the guilt/innocence phase of his trial, which had occurred several years before. Pet'r's Pet. 7, ECF No. 1. Specifically, he notes all of his counsel were employed by the El Paso County Public Defender's Office, and, as a consequence, he believes his trial counsel at his second punishment hearing did not raise errors made by his counsel at the guilt/innocence phase of his trial. *Id.*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). A court analyzes a defendant's claim that his counsel failed to provide effective assistance under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). The burden of proof is on the habeas petitioner alleging ineffective assistance. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). A petitioner must show (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94.

To demonstrate deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance is "highly deferential," with every effort made to avoid "the distorting effect of hindsight," and instead "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. As a consequence, federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable, unless clearly proven otherwise. *Id.*

To demonstrate prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Porter v.*

-9-

*McCollum*, 558 U.S. 30, 38–39 (2009) (internal quotation marks and citation omitted). "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 563 U.S. at 189. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

If a petitioner fails to prove one prong, it is not necessary to analyze the other. *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). A petitioner must show both that his counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001). "[S]econd-guessing is not the test for ineffective assistance of counsel." *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir. 1989). "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

In addition, a federal habeas court must review a state petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen*, 563 U.S. at 190. It must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one,

so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 105.

In *Tuilaepa v. California*, 512 U.S. 967 (1994), the Supreme Court distinguished the two aspects

of the capital decision-making process—the eligibility decision and the selection process.

To be *eligible* for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment. . . . To render a defendant *eligible* for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one "*aggravating circumstance*" (or its equivalent) at either the guilt or penalty phase. . . . The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both). . . . As we have explained, the aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. . . . Second, the aggravating circumstance may not be unconstitutionally vague. . . .

We have imposed a separate requirement for the *selection decision*, where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence. What is important at the *selection state* is an individualized determination on the basis of the character of the individual and *the circumstances of the crime*. That requirement is met when the jury can consider *relevant mitigating evidence* of the character and record of the defendant and the circumstances of the crime. . . .

The *eligibility decision* fits the crime within a defined classification. Eligibility factors almost of necessity require an answer to a question with a factual nexus to the crime or the defendant so as to "make rationally reviewable the process for imposing a sentence of death." . . . The *selection decision*, on the other hand, requires individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure an assessment of the defendant's culpability.

512 U.S. at 971–73 (citations omitted) (emphasis added).

A grand jury indicted Cruz for the capital murder of his girlfriend, Tonya West, and her unborn

fetus. According to Texas Penal Code § 19.03, "[a] person commits an offense [of capital murder] if

the person commits murder as defined under Section 19.02(b)(1) and . . . the person murders more than

one person . . ." The aggravating circumstance in Cruz's case was the murder of more than one person. In other words, for Cruz to be eligible for capital punishment, the State had to first prove Cruz murdered more than one person.

The State presented evidence that Cruz murdered both West and her unborn child. Thus, the State presented evidence that Cruz was eligible for the death penalty.

Cruz's counsel did not present evidence that West had previously threatened and antagonized Cruz during either the guilt/innocence or first punishment phase of his trial. The evidence was not relevant to the eligibility decision. It was, however, relevant to establish why Cruz wanted to kill West. *United States v. McKinney*, 954 F.2d 471, 479 (7th Cir. 1992). Consequently, the omission of this evidence during the guilt/innocence phase of the trial was "sound trial strategy." *Strickland*, 466 U.S. at 689. But it was still mitigating evidence of the circumstances of the crime relevant to the selection decision. So, his trial counsel arguably erred when they did not present this evidence during the punishment phase of the trial.

The jury found Cruz guilty of capital murder, as charged in the indictment.

On appeal, the State conceded the evidence was legally insufficient to prove Cruz intended to kill the unborn child, as there was no evidence Cruz knew West was pregnant. *Cruz*, 2010 WL 2949292, at *3. The Eighth Court of Appeals accordingly reformed the judgment to reflect Cruz was guilty of the lesser-included offense of murder and ordered a new punishment hearing. *Id.*, at *2–3. As a consequence of the appellate court's decision, Cruz was no longer *eligible* for capital punishment.

At Cruz's second punishment hearing, his counsel presented mitigating evidence of the circumstances of the crime. They questioned a police officer about the weapons discovered in West's apartment:

> Q . . . You entered Apartment 809 [West's apartment]?

A Yes, sir.

Q Okay. Did you see a shotgun located inside a closet closest to the front door?

A Yes, sir.

Q Did you take any photographs of it?

A Yes, sir.

Q Okay. And did you have an occasion to see . . . a black handgun, located inside another closet?

A Yes, sir. I believe that was actually in the master bedroom.

Reporter's R., vol. 4, p. 172, ECF No. 20-26. They also elicited testimony from Cruz about West

antagonizing him in the past:

Q Quinn, at some point you find out that she has pressed some charges against you.

A (Moving head up and down). Yes, ma'am.

Q When did you find out about those charges?

A You know, the thing is, this is what it was. She would always call me up and begin arguments. She would make threats. I would react as well and make threats, but she would write down the things I say or supposedly said and then go to the police or somebody and say, "You know what? He's threatening me." And then she would call me up and throw it in my face like, "Oh, guess what? I have two threats against you." I'm like, "What are you doing? You know that I'm here." I end up talking to the detective while I was in Denver. I called the detective. The only reason I found out I had terroristic threats was she gave me the numbers and throwing in my face, laughing.

Q Let's just back up.

A Okay.

Q Where are you when she told you about the charges?

A I was in Denver, Colorado.

Q And where was she?

A She was in El Paso, Texas.

Q What information did she give you about those, the terroristic threat charges?

A Actually, she was saying that she filed threats against me and she gave me the actual numbers.

Q Which numbers? Explain to us.

A Would have been the case numbers.

Q Case numbers. Okay.

A The case numbers. And I wish I had the information with me but, you know, she ended up giving me the information. I ended up going through the police department. And through a series of calls, I ended up talking to the actual detective that actually did the terroristic threat.

Q So you're in Colorado.

A Uh-huh.

Q And you're calling to a detective in El Paso.

A Yes, ma'am.

Q Okay. You're speaking to him.

-13-

A Yes. And I'm asking, because I was at my college trying to go back to reenroll. I'm freaking out because she's laughing at my face telling me, "I put all these charges against you." And then I called the detective asking him, "What's going on? Please tell me what's going on." And the detective told me to be careful because this woman is putting charges against you and you might get in trouble so be very careful.

*Id.*, vol. 5, p. 173–74, ECF No. 20-27.

In sum, Cruz received a new punishment hearing after the Eighth Court of Appeals reformed the judgment. So, he was able to present his mitigating evidence that West had owned guns and antagonized him. Hence, Cruz cannot show his counsel made errors so serious that they were not functioning as the counsel guaranteed him by the Sixth Amendment when they did not address West's prior behavior during the guilt/innocence phase of his trial. Cruz also cannot show his counsel's performance was so deficient that it fell below an objective standard of reasonableness or that the performance prejudiced the defense because they presented evidence of West's prior behavior during the second punishment phase of his trial.

Cruz also suggests that because the El Paso County Public Defender's Office employed all of his counsel, his attorneys at his second punishment trial did not raise errors made by his attorneys at the guilt/innocence phase of his trial. Pet'r's Pet. 7, ECF No. 1. He explains "Attorney Castanon . . . filed a pre-trial 'Motion to Withdraw' . . . specifically citing a 'Conflict of Interest' as grounds for withdrawal." *Id.*, at 17. But the trial court denied the motion. Then his attorneys "did not raise the errors (cited in Ground One) that [his prior attorneys] committed at Cruz's Guilt-Innocence trial in September 2007." *Id.* Cruz adds "[t]he legal test for ineffective assistance of counsel based on conflict of interest is governed by *Cuyler v. Sullivan*, 446 U.S. 335 (1980)." *Id.*, at 18.

*Cuyler* provides an alternative framework for analyzing an ineffective-assistance-of-counsel claim alleging a conflict of interest. *Id.* at 350–51. The practical difference between the *Cuyler* framework and the *Strickland* framework is, simply, that under *Cuyler* a defendant need not show

-14-

prejudice. *See Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995). Under *Cuyler*, a petitioner must only show that his attorney labored under an actual conflict which adversely affected his attorney's performance to establish a Sixth Amendment violation. *Cuyler*, 446 U.S. at 348. "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

Cruz does not allege, much less prove, that his counsel at his second punishment hearing represented other clients with competing interests. Rather, his allegation derives from the fact that, many years before, he made negative comments about the Public Defender's Office. Pet'r's Pet. 17–18, 23–24, ECF No. 1. Consequently, Cruz fails to identify any facts remotely implicating *Cuyler*.

Moreover, the Eighth Court of Appeals reformed the judgment to reflect Cruz was guilty of the lesser-included offense of murder and ordered a new punishment hearing. *Cruz*, 2010 WL 2949292, at *2–3. At the second punishment hearing, Cruz's counsel presented evidence of West's alleged prior misconduct. Therefore, his attorneys did not need to raise the purported errors cited in ground one. Instead, they corrected them.

In sum, Cruz can neither establish deficiency or prejudice, nor rebut the presumption that his attorneys presented evidence in his case in a manner consistent with trial strategy. *See Strickland*, 466 U.S. at 689 (stating "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (citation omitted)).

More importantly, Cruz's ineffective-assistance-of-counsel claims fail to overcome the deferential standard of review in 28 U.S.C. § 2254(d) because he has not shown, or even attempted to show, that the state court's decision to deny him relief on these claims was contrary to, or an unreasonable application of, Supreme Court law. He is also not entitled to relief because he cannot

show "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Cruz is not entitled to relief on his ineffective-assistance-of-counsel claims.

### (3) Cruz maintains the prosecution elicited improper testimony from witnesses and made improper arguments regarding probation.

Cruz complains the State engaged in pervasive misconduct during trial. Pet'r's Pet. 6, ECF No. 1. Specifically, he alleges the State made two improper side bar comments during Cruz's cross-examination. In the first, the State queried "Are you going to ask me questions? Because I'll tell you where I want you to be. I want you to be in prison the rest of your life, sir. I don't want you dead." *Id.*, at 16. (RR5: 199). In the second, the State said, "Oh, I see it," after Cruz told the jury he was remorseful. *Id.* Also, he contends the State forced him to object another five times for improper arguments regarding probation, argument outside the record concerning a fine, and reference to community expectations. *Id.*

The appropriate standard of review for a claim of prosecutorial error on a writ of habeas corpus is "'the narrow one of due process.'" *Darden v Wainwright*, 477 U.S. 168, 181 (2009) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). The relevant question is whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643; *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (1985). "Although the asserted prosecutorial misconduct may have made the defendant's trial less than 'perfect', that imperfection must have rendered the trial 'unfair' in order to be 'constitutional error.'" *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citing *Darden*, 477 U.S. at 181). The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that

the verdict might have been different had the trial been properly conducted. *Id.*

Cruz objected to the State's two side bar comments in his direct appeal. *Cruz*, 2016 WL 3194924, at *5. The Eighth Court of Appeals noted that Cruz's counsel objected to the comments, and the trial court sustained objections. *Id.* But it explained that "[u]sually, one or two instances of improper side bar remarks, even uncured, do not amount to a denial of a fair trial. *Id.* (citing *Jimenez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd). It concluded that "[w]e cannot agree that these two sidebar comments alone . . . amount to such flagrant misconduct that [Cruz] was denied a fair trial. Additionally, it explained that the trial court's instruction to disregard the prosecutor's remarks cured any error that may have occurred." *Id.* So, it overruled the objection. *Id.*

Cruz objected to the State's references to parole during closing argument. *Id.*, at *1. The Eighth Court of Appeals agreed that it was "improper for a prosecutor to apply the parole law specifically to the defendant during jury argument." *Id.* (citing Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)(West 2015); *Perez v. State*, 994 S.W.2d 233, 237 (Tex. App.—Waco 1999, no pet.)). Here, the State "essentially encouraged the jury to assess the State's desired sentence, a life sentence, based on the parole information." *Id.*, at 2. Consequently, the "argument encouraged the jury to consider the effects of parole on [Cruz's] punishment and therefore was improper." *Id.* The appellate court then applied the three-part test in Texas Rule of Appellate Procedure Rule 44.2(b): "(1) the severity of the conduct as evidenced by the prosecutor's argument (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct; that is, the effect of any cautionary instruction given by the court; and (3) the certainty of conviction absent the misconduct." *Id.* (citing *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex.Crim.App.1998). It determined that (1) "the prejudicial effect on [Cruz] was minor," (2) "no curative measures were taken by the trial court," and (3) "the prosecutor's misconduct had little, if any, effect in light of the punishment assessed." *Id.* It

-17-

added, considering the evidence, that "it is unlikely that the jury would have sentenced [Cruz] to less time had the prosecutor's comments not been made." *Id.*, at *3. It found that the "improper jury argument did not have a substantial effect on the jury's verdict." *Id.* (citing *Fowler v. State*, 958 S.W.2d 853, 866 (Tex. App.—Waco 1997, aff'd, 991 S.W.2d 258 (Tex.Crim.App.1999)). Hence, it overruled the objection. *Id.*.

Cruz argued the State's references a fine as part of his sentence constituted improper jury argument. *Id.* The Eighth Court of Appeals explained that "[p]roper jury argument falls into four specific categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument by opposing counsel, and (4) plea for law enforcement." *Id.* (citing *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973); *Van Zandt v. State*, 932 S.W.2d 88, 92 (Tex. App.—El Paso 1996, pet. ref'd). However, "[t]o properly preserve a complaint about improper jury argument, the defendant must: (1) object; (2) request an instruction to disregard; and (3) move for mistrial." *Id.* (citing *Auguste v. State*, No. 08–99–00303–CR, 2002 WL 475226 (Tex. App.—El Paso Mar. 29, 2002, no pet.) (not designated for publication), citing *Harris v. State*, 784 S.W.2d 5, 12 n.4 (Tex. Crim. App. 1989)). Here, Cruz "failed to move for mistrial after the trial court sustained his objection and instructed the jury to disregard the statement." *Id.* Consequently, because he "did not pursue his objection to an adverse ruling, he has waived his contentions regarding that statement on appeal." *Id.* (citing *McFarland v. State*, 989 S.W.2d 749, 751 (Tex. Crim. App. 1999)). Therefore, it overruled the objection.

Cruz maintained the State's references to community expectations also constituted improper jury argument. The State argued during its closing:

> [Prosecutor]: On behalf of the State of Texas, we want to thank you. . . . We are not asking willy-nilly for life in prison. We are asking that you follow through what his original intent was. He was going to kill her and take his own life. He deserves. Justices

-18-

requires. This family deserves. Tonya West deserves.

> [Defense counsel]: Objection, Your Honor. Improper argument.
> [The Court]: Overruled.
> [Prosecutor]: Tonya West deserves justice, and the community's safety deserves
life.

*Id.*, at *1. The Eighth Court of Appeals reviewed the evidence presented in the case:

> Several eyewitnesses testified that they either saw [Cruz] shoot West with a gun or heard
> gunshots and then saw West lying on the ground. Shortly after turning himself in to the
> police, [Cruz] directed them to the firearm's location where he disposed of it. . . . The
> police later discovered that [Cruz] flew from Commerce City, Colorado, to El Paso, Texas,
> arriving in El Paso the morning of murder. [Cruz] wrote several letters dated the day
> before the murder, wherein he gave away all his possessions to friends and family; asked
> them to pay all of his bills with the money in his bank account; and asked a friend to send
> a $10,000 check from his bank account to his parents. One letter in particular, addressed
> to his parents, stated that, "This is a war I must finish. I am going to kill her one way or
> another." Evidence was also introduced that approximately one month before the murder,
> [Cruz] threatened West. A police report documented [Cruz's] threats made to West:
>
>> [H]e would kill her anytime he wanted; he would cut off her f**king head;
>> If you want a war, you got a war; I'm going to kill you. Trust me, I am;
>> You're going to die, don't you know; Two to three minutes to chop off your
>> head. Then you'll know I'm serious; I will find you and I will kill you in
>> two minutes with no problem and just leave.
>
> The medical examiner testified that West's death was a result of a homicide due to multiple
> gunshot wounds causing her to bleed to death. West sustained a total of four bullet
> wounds.

*Id.*, at *2–3. The appellate court agreed that the argument may have been improper but considered it

unlikely "that [Cruz] would have received a lesser sentence if the improper comments had not been

made." *Id.*, at *1. It therefore concluded "that the improper jury argument did not have a substantial

effect on the jury's verdict. *Id.*, *3. And it overruled the objection. *Id.*

After reviewing the record, the Court finds that the State's errors were minor and did not infect

"the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416

U.S. at 643. The Court further finds that there was not a reasonable probability that the verdict might

have been different had the trial been conducted without the State's errors. *Rogers*, 848 F.2d at 609.

The standard of review, however, "is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. 465 (2007). The Court finds the state court's determinations were reasonable.

Furthermore, 28 U.S.C. § 2254(d) imposes a highly deferential standard for claims previously adjudicated in state court. For pure questions of law and mixed questions of law and fact, state court determinations receive deference unless the decision was contrary to or involved an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision is contrary to federal law if (1) it applies a rule different from the governing law set forth in Supreme Court cases, or (2) it decides a case differently than the Supreme Court when there are "materially indistinguishable facts." *Poree v. Collins*, 866 F.3d 235, 246 (5th Cir. 2017); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010). A state court decision involves an unreasonable application of federal law when it applies a correct legal rule unreasonably to the facts of the case. *White v. Woodall*, 572 U.S. 415, 425 (2014). An unreasonable application of federal law must be objectively unreasonable; clear error will not suffice. *Boyer v. Vannoy*, 863 F.3d 428, 453 (5th Cir. 2017).

Cruz has not met his burden of showing that any of the state court decisions were contrary to clearly established Federal law or were unreasonable determinations of the facts. Cruz is not entitled to relief on these claims.

**(4) Cruz asserts the trial court erred when it permitted the prosecution to argue he could work off his fine while incarcerated.**

Cruz claims the the State discussed facts outside the record during closing arguments concerning a fine. Pet'r's Pet. 19, ECF No. 1. He explains that the State asked the jury to impose the maximum possible fine of $10,000 because he could work while he was in prison and earn money to pay off the fine. But he

further explains that the Texas Department of Criminal Justice does not normally pay wages to prisoners and, in any event, his disabilities preclude him from working. So, he could not pay a fine.

As the Court noted above, Cruz "failed to move for mistrial after the trial court sustained his objection and instructed the jury to disregard the statement." *Cruz*, 2016 WL 3194924, at *3. Consequently, because Cruz "did not pursue his objection to an adverse ruling, he . . . waived his contentions regarding that statement on appeal" in state court. *Id.* (citing *McFarland v. State*, 989 S.W.2d 749, 751 (Tex. Crim. App. 1999)).

"This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. A procedural restriction is independent if the state court's judgement "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). Texas' contemporaneous objection rule to properly preserve a complaint about improper jury argument has long been recognized as an independent and adequate state procedural ground sufficient to bar federal review. *Sharp v. Johnson*, 107 F.3d 282, 285–86 (5th Cir. 1997); *Amos*, 61 F.3d at 339–41. Failure to lodge a contemporaneous objection relegates a petitioner to showing cause and prejudice for his procedural default or demonstrating that the federal court's failure to review will result in a "fundamental miscarriage of justice." *Sharp*, 107 F.3d at 286; *Amos*, 61 F.3d at 339.

Cruz fails to make a showing of cause and prejudice for his procedural default. Procedural bar aside, the Court notes that a failure to move for a mistrial is an indication that the challenged argument was not perceived by Cruz at trial as having a substantial adverse effect or would not necessarily be

understood as advancing improper considerations. *Milton v. Procunier*, 744 F.2d 1091, 1095 (5th Cir. 1984). Cruz is, therefore, not entitled to relief on this claim.

### (5) Cruz contends the trial court erred when it denied his counsel's motions to withdraw, for a new trial, and granted his counsel's motions to withdraw and substitute counsel.

Cruz alleges that the trial court erred and effectively deprived him of a fair trial and his right to counsel in the second sentencing hearing by denying his trial counsel's motion to withdraw based on a conflict of interest. Pet'r's Pet. 7, 17–18. Specifically, Cruz claims his trial counsel at his second sentencing hearing—lawyers with the El Paso County Public Defender's Office—based their motion to withdraw on the fact that some of the State's evidence consisted of letters from Cruz which contained negative comments about his prior representation by other lawyers with the El Paso Public Defender's Office. *Id.* at 23–24. Cruz further complains that the trial court erred by denying his motion for new trial and granting a counsel motion to withdraw and substitute counsel at the conclusion of his second punishment hearing. Cruz argues that the cumulative effect of these errors deprived him of a fundamentally fair trial. *Id.* at 8, 20–22.

Cruz relies on Supreme Court precedent in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). *Cuyler* provides an alternate analysis when an ineffective-assistance-of-counsel claim involves a conflict of interest. Under *Cuyler*, to establish a Sixth Amendment violation, a petitioner need only show that his attorney labored under an actual conflict which adversely affected his performance. *Cuyler*, 446 U.S. at 348; *Beets v. Scott*, 65 F.3d 1258, 1277 (5th Cir. 1995) (en banc). "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

Cruz fails to identify any facts remotely implicating *Cuyler*. Cruz does not allege, much less

-22-

prove, that his attorneys represented clients with competing interests as contemplated in *Cuyler*. Rather, Cruz's allegation derives from the fact that he made negative comments many years before about the Public Defender's Office. Pet'r's Pet. 17–18, 23–24, ECF No. 1. In essence, the facts underlying this claim are not the sort of facts that would have undermined his counsel's performance. Without any evidence that the denial of the motion to withdraw had any impact on his trial or the performance of counsel, Cruz cannot muster a constitutional claim.

To the extent Cruz briefly complains about the denial of his motion for new trial and granting a later motion to withdraw, Cruz provides no basis for believing either of those decisions were erroneous, much less error of constitutional magnitude. *Id.*, at 20–22. Without any substantial argument to back these complaints, his claims are meritless, if not waived by his lack of argument. *See Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (explaining a statement of a legal conclusion, without a serious attempt to argue or substantiate the issue, is a waiver or abandonment of the issue).

Moreover, Cruz cannot establish that the state court's denial of this claim is a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, the resolution of the claim is barred from re-litigation under 28 U.S.C. § 2254(d).

## EVIDENTIARY HEARING

Cruz requests an evidentiary hearing to further develop the record in support of his claims. A federal court's review of claims previously adjudicated on the merits by a state court "is limited to the record that was before the state court." *Cullen*, 563 U.S. at 181; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). A court may hold an evidentiary hearing only when the petitioner shows that (1) a claim relies on a new, retroactive rule of constitutional law that was previously unavailable, (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, or (3) the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error,

no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2). Here, Cruz's petition asserts multiple claims already adjudicated on the merits in state court. He does not rely on a new rule of constitutional law or new evidence. The evidence of his guilt was overwhelming. Therefore, he is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, Cruz has not made a substantial showing of the denial of a constitutional right. Thus, reasonable jurists could not debate the denial of Cruz's § 2254 petition or find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Therefore, the Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Cruz is not entitled to § 2254 relief. The Court further concludes that Cruz is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that the Cruz's motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Cruz's "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**.

-24-

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this _6th_ day of August 2019.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE